682 P.2d 91

**Edna R. FENICH, Claimant-Appellant,**

v.

**BOISE ELKS LODGE NO. 310, Employer,**

and

**Argonaut Northwest Insurance Company, Surety, Defendants-Respondents,**

and

**State of Idaho, Industrial Indemnity Fund, Defendant.**

No. 14359.

Supreme Court of Idaho.

May 9, 1984.

Rehearing Denied June 25, 1984.

Jerry Goicoechea and Lynn M. Luker (argued), Boise, for claimant-appellant.

John W. Barrett and Michael G. McPeek, Boise, for defendants-respondents.

BISTLINE, Justice.

Edna Fenich (claimant) was working as a bartender for the Boise Elks Lodge (employer) on November 10, 1977. On kicking shut a stubborn beer cooler door, she twisted her back. On August 16, 1978, a panel of three doctors rated her medical *impairment* at five percent attributable to the 1977 accident. In a letter to the employer's surety (Argonaut), dated December 11, 1978, her attending physician disagreed with the panel's rating and gave her at least a fifteen percent medical *impairment* rating.

In January of 1979, claimant, apparently not being represented by an attorney, signed a compensation agreement prepared by the surety on behalf of itself and the employer. The agreement utilized a printed form promulgated by the Commission.

Following the Commission's approval of the compensation agreement, claimant's condition progressively worsened. She was advised by her personal physician that she would not be able to work again. On April 7, 1980, claimant, represented by an attorney, filed an application for hearing with the Commission requesting additional benefits from her employer, the surety, and also from the State of Idaho, Industrial Special Indemnity Fund (ISIF); claiming "total and permanent disability resulting from a change in condition." R., p. 1. A hearing was held on November 5, 1980, following which the Commission's referee made findings of fact and conclusions of law. These were adopted by the Commission on April 15, 1981. It was found that claimant had established a change of condition since the 1977 injury, but further found that she had failed to establish that such change was attributable to the accident and resultant injury. Claimant's motion for reconsideration was denied June 5, 1981.

On June 18, 1981, claimant filed a new application for hearing, seeking a determination of *disability*, including non-medical factors not previously considered, and claiming an award of total disability under the odd-lot doctrine. On October 6, 1981, the Commission dismissed claimant's application.

On this appeal claimant challenges (1) the April 15, 1981, decision finding that she had failed to demonstrate a causal relationship between her change in condition and her industrial accident; (2) the June 5, 1981, order denying her motion to reconsider; (3) and the October 6, 1981, order dismissing her June, 1981, application for hearing.[1]

The employer and surety have moved to dismiss the appeal insofar as were concerned the orders of April 15, 1981, and June 5, 1981, based upon the grounds that appeals from those orders were untimely. We reserved our ruling on that motion until we heard oral argument on the motion and on the merits. We turn first to the motion to dismiss.

I.

The Commission, in the April 15, 1981, order denying claimant's additional compensation for change in condition retained jurisdiction to "decide any further issues presented by this matter." R., p. 13. Claimant's motion to reconsider this decision was denied by the Commission on June 5, 1981. The Commission did not at this time specify whether it was continuing to retain jurisdiction.

Idaho Appellate Rule (I.A.R.) 14 provides that "An appeal as a matter of right from an administrative agency may be made only by physically filing a notice of appeal ... within 42 days ... on any decision, order or award appealable as a matter of right." I.A.R. 11(d) provides that appeals may be taken to the Supreme Court as a matter of right "From any final decision or order of the Industrial Commission or from any final decision or order upon rehearing or reconsideration by the administrative agency."

The employer and its surety argue that because more than 42 days passed before claimant appealed from the April 15 and June 5 orders, the appeal should be dismissed as to those orders. Claimant, on the other hand, contends that the April 15 order was not a final and appealable order because the Commission retained jurisdiction to "decide any further issues presented by this matter." She argues that the June 5 order denying her motion to reconsider also is not a final and appealable order because it refused to modify the previous order and did not give up the jurisdiction previously retained. She argues that this Court should determine that either (1) the only order which constitutes a final order is the October 6, 1981, order which dismissed her application for hearing and from which she timely appealed; or (2) that the Commission has not entered a final and

---

1. This Court entered an order dismissing claimant's appeal as to the ISIF on September 8, 1983, claimant having entered into a stipulation and lump sum discharge with ISIF and having requested this Court to dismiss her appeal against ISIF.

appealable order on the change of condition question because its retention of jurisdiction is still in effect. We are not persuaded by claimant's arguments.

Although the Commission retained jurisdiction to "decide any further issues presented by this matter," it is clear that the Commission fully and finally resolved the question of claimant's right to further relief by reason of change in condition, if not by the first order of April 15, then by the second order denying reconsideration on June 5. This Court in *City of Coeur d'Alene v. Ochs*, 96 Idaho 268, 526 P.2d 1104 (1974), held that an order is final and appealable when it fully and finally resolves all the issues of a case. Additionally, the Court has held that whether an order is final and appealable "must be determined by its content and substance, and not by its title." *Idah-Best, Inc. v. First Security Bank*, 99 Idaho 517, 519, 584 P.2d 1242, 1244 (1978). The Court there stated that "if the instrument 'ends the suit,' . . . 'adjudicate[s] the subject matter of the controversy,' . . . and represents a 'final determination of the rights of the parties,' . . . the instrument constitutes a final judgment regardless of its title." The April 15 and June 5 orders ended the proceeding and adjudicated fully the issues raised by claimant's claim based on her change in condition. Thus, the fact that the Commission retained jurisdiction to resolve other issues does not affect the finality of the order with respect to her change of condition. *See McCall v. Potlatch Forests*, 67 Idaho 415, 182 P.2d 156 (1947). Claimant's appeal from the orders of April 15 and June 5 not having been timely filed, her appeal as to the Commission's determination on her application for compensation for change of condition is dismissed.

## II.

The Commission, in its October 6, 1981, order dismissing claimant's application for consideration of non-medical factors and a disability award under the odd-lot doctrine stated that:

"The Commission concludes that the doctrine of Res Judicata bars the claimant's present Application for Hearing. It is apparent that the compensation agreement, which became final without appeal, either resolved the claimant's disability or, if it did not, that the claimant's disability could have been litigated and resolved at that time. It is apparent that a dispute between the ratings of various physicians was resolved by agreement of the parties and disagreement was reduced to an award of the Commission which became final." R., p. 30.

Claimant urges that the compensation agreement is final and conclusive only as to those matters actually considered in the agreement and that the compensation agreement does not preclude an additional award being made considering non-medical factors—it being contended that those factors were not considered in the compensation agreement. The employer and surety, on the other hand, argue that the agreement is *res judicata* as to all matters which were or *could have been considered* at that time. This issue has been resolved by this Court in *Woodvine v. Triangle Dairy, Inc.*, 106 Idaho 716, 682 P.2d 1263 (1984) in which we held that compensation agreements are final and conclusive "only as to those matters *actually adjudicated.*"

The compensation agreement is facially ambiguous. Its printed language is as follows:

"THE EMPLOYEE HAS BEEN GIVEN A
   PERMANENT DISABILITY AND/OR
   IMPAIRMENT RATING OF; . . . ."

This language clearly leaves the reader in doubt as to whether the agreement is based upon medical impairment only or on disability which would include non-medical factors. I.C. § 72–425 provides that " 'Evaluation of permanent disability' is an appraisal of the injured employee's present and probable future ability to engage in gainful activity as it is affected by the

medical factor of permanent impairment *and by pertinent nonmedical factors provided in section 72-430,* Idaho Code." (Emphasis added.) Disability must include medical impairment, but medical impairment will not always be the same as disability. I.C. § 72-430 in turn provides:

"**72-430. Permanent disability—Determination of—Percentages—Schedule.**—(1) Matters to be considered. In determining percentages of permanent disabilities, account shall be taken of the nature of the physical disablement, the disfigurement if of a kind likely to handicap the employee in procuring or holding employment, the cumulative effect of multiple injuries, the occupation of the employee, and his age at the time of accident causing the injury, or manifestation of the occupational disease, consideration being given to the diminished ability of the afflicted employee to compete in an open labor market within a reasonable geographical area considering all the personal and economic circumstances of the employee, and other factors as the commission may deem relevant, . . . ."

Further, the agreement provides that claimant's permanent disability and/or impairment rating was "15% as compared to the loss of the whole man from J. Gordon Daines, M.D., and 5% as compared to the loss of the whole man from a panel of doctors which consisted of Leonard Alkire, M.D., Richard Wilson, M.D., and James Coughlin, M.D., the average of the ratings being 10% as compared to the loss of the whole man; being 50 weeks at 90.75." This language reflects the distinct probability that the rating may have been arrived at by merely considering claimant's medical impairment. R., p. 25. Fortifying our view, we note the Commission's language in its decision of April 15, 1981, denying claimant relief for her change in condition:

"IV.

"The claimant argues, in her brief, that

" 'It cannot be emphasized strongly enough that the compensation agreement entered into between the Claimant and the surety in January of 1979, applied to the amount of physical impairment only . . . . At no time was any consideration given to any nonmedical factors, nor was a disability rating ever discussed.'

*"While these statements are true,* the issue set forth in her Application for Hearing, and on which the evidence was presented, was whether she is suffering from 'total and permanent disability *resulting from a change in condition'* (emphasis added). The claimant cannot prevail based upon a theory that was neither pleaded nor tried, so her argument that non-medical factors were not considered in the compensation agreement must fail." (Emphasis added.)

We hold that it is unclear whether the parties intended the compensation agreement as an adjudication of claimant's disability. We therefore set aside the Commission decision and remand in order that the Commission ascertain, from the record if it can do so, whether the parties knowingly and mutually agreed that the 15 percent rating set forth in the agreement was for claimant's physical impairment or disability—in which regard the Commission is requested to make appropriate findings of fact and conclusions of law. If the Commission concludes that the parties mutually intended the agreement to cover both impairment and disability it may reaffirm its prior order in that regard. If, however, the Commission does not so conclude, it shall make a separately stated determination of disability—including appropriate non-medical factors.

III.

Claimant lastly argues that should the Court determine that the compensation agreement is valid and final in all respects, it is still subject to modification under I.C.

§ 72–719.[2] Because we have determined that the compensation agreement may not be final and conclusive as to matters not adjudicated therein, we need not address this issue at this time.

Appeal dismissed from the Industrial Commission orders of April 15 and June 5. The order of October 6 is reversed in part and remanded for further proceedings consistent with this opinion.

Costs to claimant.

DONALDSON, C.J., HUNTLEY, J., and McFADDEN, J., Pro Tem., concur.

BAKES, Justice, concurring specially:

I concur in that portion of the majority opinion which concludes that the compensation agreement is ambiguous. (*See* Bakes, J., special concurring opinion in *Woodvine v. Triangle Dairy*, 106 Idaho 716, 682 P.2d 1263 (1984)).

---

2. **"72–719. Modification of awards and agreements—Grounds—Time within which made.—**
. . . .
. . . .

"(3) The commission, on its own motion at any time within five (5) years of the date of the accident causing the injury or date of first manifestation of an occupational disease, may review a case in order to correct a manifest injustice."